UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

DOMILIO TERAN PEREZ,

      Petitioner,

    v.

DAVID HARDEN, WARDEN,
GLADES COUNTY DETENTION
CENTER; GARRETT J. RIPA,
FIELD OFFICE DIRECTOR OF
ENFORCEMENT AND REMOVAL
OPERATIONS, UNITED STATES
DEPARTMENT OF HOMELAND
SECURITY; TODD M. LYONS,
ACTING DIRECTOR, UNITED
STATES IMMIGRATION AND
CUSTOMS ENFORCEMENT;
KRISTI NOEM, SECRETARY OF
HOMELAND SECURITY; AND
PAMELA JO BONDI, UNITED
STATES ATTORNEY GENERAL,

      Respondents,

Case No. 2:26-cv-775-KCD-DNF

## **ORDER**

Petitioner Domilo Teran Perez, a Venezuelan national, petitions this Court for a writ of habeas corpus challenging his detention by U.S. Immigration & Customs Enforcement ("ICE"). (Doc. 1.)[1] He points to a straightforward statutory command: under federal law, noncitizens cloaked

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

with Temporary Protected Status ("TPS") cannot be detained or deported. *See* 8 U.S.C. § 1254a(d)(4). Because he believes he is a TPS beneficiary, Perez argues his ongoing confinement violates both the Immigration and Nationality Act and the Fifth Amendment's Due Process Clause. (Doc. 1 ¶ 4.)

If Perez still had TPS, his petition would have merit. But as the Government points out, Perez's TPS expired months before ICE detained him. And though Perez applied for a TPS-extension, his application was never approved. Instead, the Department of Homeland Security terminated the Venezuela TPS designation entirely.

Perez tries to overcome this reality by leaning on a California district court declaratory judgment that the Venezuela-TPS program was unlawfully terminated. But that order is not binding on this Court. So as things stand now, Perez's TPS remains expired.

A writ of habeas corpus is a mechanism to test the legality of physical confinement, and the burden falls squarely on the petitioner to show that his custody violates the Constitution or federal law. *See* 28 U.S.C. § 2241(c)(3); *Whitfield v. United States Sec'y of State*, 853 F. App'x 327, 329 (11th Cir. 2021). Since Perez's petition rests squarely on a shield (TPS) he no longer possesses, he cannot meet that burden. His detention is therefore valid, and the petition must be denied.

## I. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, grants federal courts the power to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id.* § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

## II. Discussion

Perez insists that his detention is unlawful for two reasons. He first claims to have active TPS. Then he argues that his detention violates the Fifth Amendment's Due Process Clause. Neither point prevails. Perez is no longer a TPS beneficiary, and his detention is currently legal. The Court addresses each issue in turn.

### A. TPS

The TPS program "provides humanitarian relief to foreign nationals in the United States who come from specified countries." *Sanchez v. Mayorkas*, 593 U.S. 409, 412 (2021). Congress enacted the TPS statute "out of concern that the forced repatriation of these individuals could endanger their lives or

safety." H.R. Rep. 100-627, at 6 (1988). The Secretary of the Department of Homeland Security may designate a country's citizens for TPS when that country experiences "especially bad or dangerous conditions," such as armed conflict, environmental disaster, or other extraordinary and temporary conditions that threaten that country's citizens' safe return. 8 U.S.C. § 1254a(a)(1)(B), (b)(1); *see also* 6 U.S.C. § 557; *Haitian Evangelical Clergy Ass'n v. Trump*, 789 F. Supp. 3d 255, 265 n.1 (E.D.N.Y. 2025) (noting that while the TPS statute vest power in the Attorney General, "Congress has transferred authority related to TPS from the Attorney General to the Secretary of Homeland Security."). This status protects beneficiaries "from removal and authorizes them to work here for as long as the TPS designation lasts." *Sanchez*, 593 U.S. at 412. The Secretary is required to periodically review whether a designated-country's conditions continue to justify that country's citizens' TPS. § 1254a(b)(3)(A). And in the event the Secretary finds that the country "no longer continues to meet the conditions for designation," that designation shall be terminated "by publishing notice in the Federal Register of the determination." § 1254a(b)(3)(B).

Venezuela was recently designated for TPS twice: first in 2021 and then again in 2023. Beneficiaries of the 2023 designation enjoyed TPS through April 2, 2025. *Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 FR 68130-01. That status was later extended through October 2,

4

2026, to "existing TPS beneficiaries" whose timely TPS re-registration applications were approved. *Extension of the 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 5961-01. But all this was later undone.

In February 2025, the then-DHS Secretary vacated this TPS extension and ultimately terminated Venezuela's designation altogether. *Vacatur of 2025 Temporary Protected Status Decision for Venezuela*, 90 FR 8805-01; *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01. This meant that for beneficiaries of the 2023 Venezuela designation, their TPS expired on April 2, 2025. *Termination of the October 3, 2023 Designation of Venezuela for Temporary Protected Status*, 90 FR 9040-01.

No one disputes that Perez held TPS under the 2023 Venezuela designation. The only issue is whether that status is still active. The Court concludes that it is not.

Perez's TPS expired on April 2, 2025. (*See* Doc. 1-2 at 2-3); *see also Extension and Redesignation of Venezuela for Temporary Protected Status*, 88 FR 68130-01. When that day passed, his status left with it. Still, Perez protests that he filed his re-registration application back in July 2025—months before his November 2025 detention. (Doc. 1 ¶ 16; Doc. 1-2 at 4-7.) But a pending re-registration application does not automatically confer full TPS status or its attendant protections against detention. *See Arcila Perez v. Noem*, No. 2:26-

CV-00107-SPC-NPM, 2026 WL 386699, at *1 (M.D. Fla. Feb. 12, 2026); *Gonzalez v. Jeremy Casey, Warden of Imperial Reg'l Det. Facility of U.S. Immigr. & Customs Enf't, et al.*, No. 3:26-CV-01265-RBM-MMP, 2026 WL 1333767, at *4 (S.D. Cal. May 13, 2026); *J.G.J. v. Sage*, No. 3:26-CV-706, 2026 WL 915576, at *8 (M.D. Pa. Apr. 3, 2026); *Danyil K. v. Bondi*, No. 1:25-CV-242, 2026 WL 1234577, at *1 (S.D. Tex. Apr. 17, 2026); *Guillen v. Soto*, No. CV 26-3285 (SDW), 2026 WL 1005326, at *2 (D.N.J. Apr. 14, 2026). Because Perez's re-registration application was never actually approved, he cannot claim immunity from detention. *See Guevara, v. Waren, Florida Soft Side South et al.*, No. 2:26-CV-01193-SPC-DNF, 2026 WL 1191016, at *2 (M.D. Fla. May 1, 2026); *Granadillo-Arambule v. James A. Daley, et al.*, No. 2:26-CV-00036-SCM, 2026 WL 1157161, at *2 (E.D. Ky. Apr. 29, 2026); *Geincharles v. Rokosky*, No. 26-CV-00150-ESK, 2026 WL 266093, at *2 (D.N.J. Feb. 2, 2026). And even if he could, the fact remains that the extension has been canceled, and Perez's status is inactive. *See Granadillo-Arambule*, 2026 WL 1157161, at *2; *Diaz Fernandez v. Warden, N. Lake Corr. Facility*, No. 1:26-CV-152, 2026 WL 621332, at *3 n.6 (W.D. Mich. Mar. 5, 2026); *Quintana Gomez v. Farmer*, No. 1:26-CV-854, 2026 WL 947912, at *2 n.4 (W.D. Mich. Apr. 8, 2026); *Navas v. Att'y Gen. of the United States*, No. CV 26-66-DLB, 2026 WL 797142, at *1 (E.D. Ky. Mar. 23, 2026).

Perez tries to skirt this expiration issue by pointing cross-country to *National TPS Alliance v. Noem*. No. 25-CV-01766-EMC, 2025 WL 3539156 (N.D. Cal. Dec. 10, 2025). The California district court there declared the termination of the Venezuelan TPS program unlawful. *Id*. But that judgment is not binding on this Court, and it has little effect on the habeas petition here. *See Herrera v. Noem*, No. CV-26-00625-PHX-MTL (JFM), 2026 WL 800721, at *9 (D. Ariz. Mar. 12, 2026); *Gonzalez*, 2026 WL 1333767, at *4; *Jesus Ferrer-Moran v. Kevin Raycraft et al.*, No. 1:26-CV-951, 2026 WL 1052364, at *2 (W.D. Mich. Apr. 20, 2026); *Pirela- Altamar v. Raycraft*, No. 1:26-CV-388, 2026 WL 820371, at *1 (W.D. Mich. Mar. 25, 2026); *Quintero v. Francis*, No. 25-CV-10107 (MKV), 2026 WL 265921, at *1 (S.D.N.Y. Feb. 2, 2026).

Perez thus fails to show that he currently has TPS or that he had this status when ICE detained him. His challenge to his detention under § 1254a(d)(4) is therefore rejected.

### B. Due Process

Perez separately argues that his detention violates the Fifth Amendment "because it is not rationally related to any immigration purpose; because it is not the least restrictive mechanism for accomplishing any legitimate purpose the government could have in imprisoning [him]; and because it lacks any statutory authorization." (Doc. 1 ¶ 48.) This claim also falls short.

7

To be sure, the Fifth Amendment entitles noncitizens to due process during deportation proceedings. Yet "detention during deportation proceedings [is] a constitutionally valid aspect of the deportation process." *Demore v. Kim*, 538 U.S. 510, 523 (2003). "[T]he through line of history is recognition of the Government's sovereign authority to set the terms governing the admission and exclusion of noncitizens." *Dep't of State v. Munoz*, 602 U.S. 899, 911-12 (2024). "In the exercise of its broad power over naturalization and immigration, Congress regularly makes rules that would be unacceptable if applied to citizens." *Matthews v. Diaz*, 426 U.S. 67, 79-80 (1976).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses its reasonable connection to effectuating a removal and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g., United States v. Salerno*, 481 U.S. 739, 747 (1987);

*Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Perez cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. The INA specifically authorizes the Government to detain noncitizens while they await a final removal determination. *See* 8 U.S.C. § 1226(a). And the reasons for keeping Perez locked up are perfectly legitimate regulatory goals, not punitive ones. After a hearing, an immigration judge found that Perez was not "a suitable bail risk." (Doc. 10-1 at 1.)

### III. Conclusion

Habeas corpus is a powerful tool, but it requires a fundamental premise: that the government is holding someone unlawfully. Perez cannot clear that bar. He has no valid TPS to shield him from custody, and his ongoing detention sits comfortably within constitutional bounds. The Government is simply holding him, as the law permits, while it processes his removal. Because his confinement remains lawful, this Court has no basis to intervene. Accordingly, the Petition for Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is **DIRECTED** to enter judgment, terminate any pending motions, and close the file.

**ORDERED** in Fort Myers, Florida on May 19, 2026.

Kyle C. Dudek
United States District Judge